IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **RICHARD BIBBS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 5:06-0462** |
| ) | |
| **MOUNTAIN STATE UNIVERSITY, INC.,** ) | |
| **CHARLES POLK, JAMES SILOSKY,** ) | |
| **KAY STUMP, MIKE SIMMONS,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On June 13, 2006, Petitioner, acting *pro se*, filed his Complaint claiming entitlement to relief pursuant to 42 U.S.C. §§ 1981 and 1985(3).[1] (Document No. 1.) By Standing Order entered on July 21, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

**FACTS AND PROCEDURE**

Plaintiff alleges that Defendants violated his rights under §§ 1981 and 1985 by failing to renew Plaintiff's employment contract. Specially, Plaintiff's Complaint alleges the following: (1) "Defendants, acting individually and in concert with each other, deprived plaintiff of equal rights under the law to make and enforce an employment contract by terminating (refusing to renew his contract) because of his race;" and (2) "Defendants did conspire to act individually and in concert

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

with each other to deprive the plaintiff of the right to enter into an employment contract because of his race." (Document No. 1, p. 5.) Plaintiff seeks compensatory damages in the amount of One Million Dollars and punitive damages in the amount of Three Million Dollars.

On June 7, 2004, Mountain State University [MSU] hired Plaintiff as a Secretary in the School of Extended and Distant Education [SEDE]. (Id., p. 2.)On January 3, 2005, Plaintiff was selected to fill a position titled "Administrative Assistant to the Provost of Distance Learning." (Id., p. 3.) As Administrative Assistant, Plaintiff reported and provided support to Roslyn Artis,[2] Provost of SEDE. On or about July 1, 2005, Plaintiff signed a contract with MSU renewing his Administrative Assistant position for July 1, 2005, through June 30, 2006. (Id.) MSU reserved the right to terminate the contract for cause. (Id., p. 3.) On or about February 1, 2006, Ms. Artis was promoted to Chief Advancement Officer and her position as Provost was eliminated. (Id.) In March 2006, the Secretary for SEDE resigned and Ms. Artis "informed the plaintiff that he was to fulfill the duties of the secretary position as the duties he had previously performed for her in her role as Provost of SEDE had been transferred to the Martinsburg campus." (Id., p. 4.) Plaintiff argues that he completed work consisting of functions and duties of both the SEDE Secretary and the Administrative Assistance from March until May, 2006. On April 3, 2006, Plaintiff applied for the position of Dean of Distant Education Initiatives. (Id.) Plaintiff was instructed to escort Mike Simmons, an applicant for the Dean of Distant Education Initiatives, on a campus tour on May 16, 2006. Plaintiff alleges that "Mr. Simmons asked probing, intrusive questions of a personal nature of the plaintiff" and "asked questions regarding the plaintiff's employment history and educational background" during the tour. (Id.) On May 17, 2006, Ms. Artis inquired as to whether Plaintiff had

---

[2] Ms. Artis is not named as a Defendant in the above action.

asked Mr. Simmons "how would he feel working with a black male as an administrative assistant?" (Id.) Plaintiff denied asking such a question and Ms. Artis "stated that Mr. Jim Silosky had stated to her that Mr. Simmons had said that the plaintiff had made the statement." (Id.) On May 19, 2006, Plaintiff sent an e-mail to the following individuals: Charles Polk, President of MSU; Jim Silosky, Chief Accounting Officer; Roslyn Artis, Chief Advancement Officer; and Dan Johnson, Ethics Advisor for the University. Plaintiff claims that his e-mail "addressed his concern regarding the racial overtones of the question that Mr. Simmons alleged the Plaintiff had made." (Id., p. 5.) Specifically, Plaintiff's e-mail stated the following:

> My reason for writing this email is to express my concern regarding a particular statement/question that I supposedly made to Mr. Mike Simmons, a potential candidate for a position at MSU, on Tuesday May 16, 2006 during a campus tour that I was instructed to perform although I was unaware why this request had been made of me. On Wednesday, May 17, 2006, Mrs. Roslyn Artis, Chief Advancement Officer for the university, asked me if I had asked Mr. Simmons how he would feel working with a black/African American administrative assistant. Mrs. Artis also mentioned that Mr. Simmons had told Jim Silosky that I had asked him this question and Mr. Silosky in turn informed Mrs. Artis I had made this statement. If there has been a misunderstanding with respect to my interpretation of these events I would like to know.
>
> My feelings on the matter are as follows. First I am offended (but not surprised) that it appears I had been found guilty of making the statement before anybody even took the time to ask me if I said it. I would also like to point out that I have been employed here for close to three years and would think that my word would carry as much weight as that of a potential applicant. To respond at this point seems a moot issue but I will respond nonetheless. At no time during the campus tour that I was instructed to perform with Mr. Simmons did I ask him any question remotely concerning the issue of race or initiate a conversation regarding race. If Mr. Simmons said that I did then he is a lair and would appear to be a racist as well. I say this because there was no conversation between us in which he could have possibly misunderstood or construed that I posed such a question.

(Id., p. 17.) Plaintiff notes that the above e-mail was sent to Mr. Johnson "as a complaint regarding the racial overtones involved in the statement by Mr. Simmons." (Id., p. 5.) Dr. Poke responded to Petitioner's email on May19, 2006. Dr. Poke's e-mail stated the following: "Sorry about the

3

confusion. I wouldn't put too much thought or worry into what someone says. If you come to MSU which we would like to see, it will be your call, no one else's." (Id., p. 17.) By Memo dated May 30, 2006, Plaintiff was informed that his position had been eliminated and his contract would not be renewed. Specifically, the Memo stated the following:

> The School of Extended and Distance Education is undergoing restructure to meet the needs of the University. To that end, the position of Administrative Assistant to the School of Extended and Distance Education is being eliminated. Your payroll check for the net amount of $2,061.41 is enclosed. This amount is a payout of your contract through June 30, 2006 which includes your vacation accruals. In addition, your benefits will continue through June 30, 2006.
>
> The last day that you will be required to be on campus with Mountain State University is May 30, 2006.
>
> Best wishes to you and your career endeavors.

(Id., p. 18.)

On June 13, 2006, Plaintiff filed suit in the Circuit Court of Raleigh County against the above Defendants alleging the same facts as above. (Document No. 13-2, Exhibit 1.) Plaintiff asserted claims for breach of contract, fraud, conspiracy, and intentional interference with contractual relations. (Id., p. 6-7.) On January 11, 2007, the Circuit Court granted Defendants' motion for summary judgment and dismissed Plaintiff's claims concluding that "Bibbs has shown no evidence to support his allegations of breach of contract, fraud, conspiracy, or interference." On March 27, 2007, Plaintiff appealed the decision of the Circuit Court of Raleigh County to the West Virginia Supreme Court of Appeals. (Document No. 19, Exhibit 2.) The appeal was refused by the West Virginia Supreme Court on July 23, 2007.[3]

---

[3] According to the Court's correspondence with the Circuit Clerk's Office of Raleigh County, Plaintiff's appeal was refused by the West Virginia Supreme Court of Appeals on July 23, 2007.

On March 16, 2007, the Defendants, by counsel, filed a Motion to Dismiss and/or Motion for Summary Judgment with Memorandum in Support in the present case. (Document Nos. 13 and 14.) Defendants contend that Plaintiff's Complaint must be dismissed because Plaintiff's claims are barred by the doctrines of *res judicata*. (Id.) Specifically, Defendants argue that the present case "involves the same parties, the same facts, and to a large extent, the same causes of action as the case that the plaintiff previously litigated and lost in the Circuit Court of Raleigh County." (Id.)

On March 19, 2007, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendants' Motion to Dismiss and/or Motion for Summary Judgment. (Document No. 15.) On March 27, 2007, Plaintiff filed a Motion to Amend Complaint and a Proposed Amended Complaint. In support of his Motion, Plaintiff alleged the discovery of new evidence.[4] (Document No. 16.) Plaintiff states that during the proceedings in State court, he discovered e-mails proving that he was terminated based upon racial grounds. First, Plaintiff points to e-mails from Defendant Polk and Ms. Artis. After receiving Plaintiff's e-mail on May 19, 2006, Defendant Polk e-mailed Defendant Silosky and Ms. Artis asking them "What on earth is this?". (Document 16-2, p. 8.) Ms. Artis responded as follows:

> It would appear to be my administrative assistant's attempt to assert himself. He has been in a bit of a foul mood lately due to my impending departure. He is uncertain about who my replacement will be and whether his job is secure. I was advised by JGS that Rick had asked some pretty inappropriate questions of the candidate for the Dean spot and I called him on it. He denies asking the questions and "wants to make a record" of that fact that he is "being framed and badmouthed" by his new boss before he even gets here. Perhaps he thinks that by documenting this alleged racism he is protecting himself in some way..who knows. I'll deal with it on Monday."

---

[4] The undersigned will grant Plaintiff's Motion to Amend (Document No. 16.) by separate Order. Therefore, the Court will consider the above allegations in its determination of Defendants' Motion to Dismiss and/or Motion for Summary Judgment.

5

(Id.) Defendant Polk then responded to Ms. Artis' e-mail stating that "...[m]aybe Rick should [sic] elsewhere if he is going to play that game. He can only lose. I do not even know him other than to speak. Take care." (Id.) Next, Petitioner points to an e-mail from Cindy Alexander to Kay Stump dated May 23, 2006. In this e-mail, Ms. Alexander states the following:

> Kay – Roslyn is on doctor's order to only work 4 hours per day, so she will be in on Thursday from 8-12. Please call her early that morning. She is not going to renew Rick Bibbs' contract, but wants to be sure it's based on a phasing out of the position rather than a 'termination' of any kind. It can be done on Tuesday. I believe she will want to give him the option of staying until June 30th or letting him leave early and be paid out, rather than having an automatic 'box' party on Tuesday; she's pretty sure he will opt to be paid out. Let me know if you have questions. – Cindy.

(Id., p. 10.) Therefore, Plaintiff seeks to amend his Complaint to include the foregoing facts and to include the allegation of discrimination and retaliation. Specifically, Plaintiff seeks to amend his causes of action as follows:

> In his first cause of action based upon U.S.C. Title 42, Chapter 21, Subchapter I, 1981(a) and CRA 1991, plaintiff incorporates as if realleged paragraphs 1 though 29 and further alleges that: Defendant Polk acting individually and as MSU's President and in concert with others did intentionally deprive the plaintiff of Equal rights under the law to make and enforce an employment contract by terminating (refusing to renew his contract) plaintiff because of his race.
>
> In his second cause of action based upon U.S.C. Title 42, Chapter 21, Subchapter I, 1981(a) and CRA 1991, plaintiff incorporates as if realleged paragraphs 1 though 30 and further alleges that: Defendant Polk acting individually and as MSU's President and in concert with others did intentionally deprive the plaintiff of Equal rights under the law to make and enforce an employment contract by terminating (refusing to renew his contract) plaintiff because of his complaint of discrimination.
>
> In his third cause of action based upon U.S.C. Title 42, Chapter 21, Subchapter I, 1981(a) and CRA 1985(3), plaintiff incorporates as if realleged paragraphs 1 though 31 and further alleges that: Defendant Polk acting individually and as MSU's President and in concert with others did intentionally deprive the plaintiff of the right to enter into an employment contract because of his race and complaints of discrimination.

(Document No. 16-2, p. 4.)

On April 2, 2007, Plaintiff filed his Response to Defendants' Motion to Dismiss and/or Motion for Summary Judgment. (Document No. 17.) Plaintiff contends that *res judicata* does not apply because his Federal and State cases involved different causes of action. Specifically, Plaintiff states that "this case involves the plaintiff's termination and the state case involved breach of contract." (Id., p. 1.) Plaintiff argues that Defendants failed to address wrongful termination in State Court. Furthermore, Plaintiff claims that the newly discovered evidence included in his Amended Complaint supports "plaintiff's claim that he was terminated because of his race and the fact that he placed a complaint." (Id., p. 4.)

On April 5, 2007, Defendants filed a Response to Plaintiff's Motion to Amend. (Document No. 18.) First, Defendants argue that Plaintiff should not be allowed to amend his Complaint because this "would be the plaintiff's third Complaint and attempt to litigate matters relating to his employment at Mountain State University." Next, Defendants contend that Plaintiff's Amended Complaint is "nearly identical" to Plaintiff's original Complaint and their Motion to Dismiss or Motion for Summary Judgment should still be granted. Defendants maintain that the Amended Complaint "eliminates some of the facts that the plaintiff no longer deems relevant and it describes additional facts pertaining to the plaintiff's belief that his rights were violated because of his race." (Id., p. 2.)

On April 9, 2007, Defendants filed a Reply alleging that the issue of race was raised in the State Court proceedings. (Document No. 19.) Specifically, Defendants contend that Plaintiff "danced around the issue of race when talking about his contract claim, but he expressly raised the issue when discussing his conspiracy claim." (Id., p. 4.) Defendants claim that Plaintiff never sought leave to amend his Complaint in State Court to include the claim of discrimination and retaliation. (Id.,

7

p. 5.) Therefore, Defendants argue that the issue of racial discrimination and retaliation was, or could have been, litigated in State Court. (Id., p. 7-8.)

## THE STANDARDS

### Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corporation v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *quoting* Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the

Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

The preclusive effects of the doctrines of *res judicata* and collateral estoppel are designed to promote judicial economy, encourage reliance on judicial decisions, and relieve parties from the expense of multiple lawsuits. See Parklane Hosiery Co. Inc. v. Shore, 439 U.S. 322, 326, 99, S.Ct.

645, 649, 58 L.Ed.2d 552 (1979); Wright & Miller, § 131.12[4][a]. "Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Young-Henderson v. Spartanburg Area Mental Health Center, 945 F.2d 770, 773 (4th Cir. 1991)(*quoting*, Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Collateral estoppel "precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." In re McNallen, 62 F.3d 619, 624 (4th Cir. 1995).

The doctrine of *res judicata* applies if the following elements are satisfied: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and present suit; and (3) an identity of the parties or their privies." Pueschel v. U.S., 369 F.3d 345, 354-55 (4th Cir. 2004). The Court will consider the above-referenced elements in determining whether the prior judgment entered by the Circuit Court of Raleigh County[5] precludes Plaintiff's above cause of action contending that Defendants' refusal to renew his employment contract was based upon racial grounds.

First, the undersigned finds that there was a final judgment on the merits in the State case. Defendants' motion for summary judgment was granted on January 11, 2007. (Document No. 13-3.) On March 27, 2007, Plaintiff filed a Petition for Appeal with the West Virginia Supreme Court. (Document No.19, Exhibit 2.) Plaintiff's appeal was refused by West Virginia Supreme Court on

---

[5] Under 28 U.S.C. § 1738, federal Courts must give full faith and credit to State Court judgments.

July 23, 2007.[6]

Next, the Court considers the causes of action in the State suit and the present suit. Plaintiff argues that his instant claims are not precluded by *res judicata* because his Federal cause of action is based upon termination due to racial discrimination and his State cause of action involved breach of contract issues. Lawsuits, however, are deemed to have the same cause of action if the two suits "arise from the same transaction or series of transactions or the same core of operative facts." Harnett v. Billman, 800 F.2d 1308, 1312 n. 1 (4th Cir. 1986); *also see* Sullivan v. Easco Corp., 662 F. Supp. 1396, 1408 (1987)("Two causes of action are deemed the same for the purposes of *res judicata* only if the same evidentiary facts would support both actions."). It is well established that "*res judicata* may apply even though the plaintiff in the first suit proceeded under a different legal theory." Aliff v. Joy Mfg. Co., 914 F.2d 39, 43 (4th Cir.1990). *Res judicata* "prevents litigation of all grounds for, or defenses to, recovery that was previously available to the parties, regardless of whether they were asserted or determined in the prior proceedings." Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *also see* Heinemann v. Jim Walter Homes, Inc., 47 F. Supp.2d 716, 722 (N.D.W.Va. 1998) ("Claim preclusion prevents a party from suing on a claim which has been previously litigated to a final judgment by that party or that party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action."). Furthermore, actual knowledge of a potential claim is not a requirement for application of the rules of merger and bar. Harnett, 800 F.2d at 1313. "[T]he

---

[6] The Court notes that Plaintiff filed his Petition for Appeal after Defendants filed their Motion to Dismiss and/or Motion for Summary Judgment. Therefore, the parties' briefs addressed the issue of whether an appealed judgment constitutes a final adjudication on the merits. This issue, however, is moot because the undersigned was informed by the Circuit Court of Raleigh County that Plaintiff's appeal was refused by the West Virginia Supreme Court on July 23, 2007.

appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Id. Therefore, a claim is barred by *res judicata* if the claim existed and "might have been offered" at the time of the first action.

On June 13, 2006, Plaintiff filed suit in both Federal and State Court alleging the same factual basis to support both actions.[7] In the present action, Plaintiff alleges that Defendants conspired to deprive him of his right to enter into an employment contract in violation of 42 U.S.C. § 1985(3), and that Defendants deprived him of his right to make and enforce contracts in violation of 42 U.S.C. § 1981. The Court finds that Plaintiff asserted the same claims in State court alleging breach of contract, fraud and misrepresentation, tortious interference, and conspiracy. (Document No. 13-3, p. 3.) Plaintiff contends that the claims set forth in his Amended Complaint are based upon newly discovered evidence, which was not addressed by the State Court. Specifically, Plaintiff claims that he discovered e-mails proving that his employment contract was not renewed due to racial discrimination and retaliation. He argues that the issue of racial discrimination and retaliation was not addressed in State Court, and therefore, not precluded by *res judicata*. The undersigned notes, however, that the above evidence was discovered during Plaintiff's State Court proceedings and considered by the State Court. The State Court quoted the above e-mails in its Opinion Order under its "Findings of Fact." (Document No. 13-3, p. 6.) Furthermore, Plaintiff raised the issue of race in his Petition for Appeal, which was refused by the West Virginia Supreme Court. (Document No. 19, Exhibit 2.)

---

[7] Paragraphs 5-9, 12-14, 17-18, 21-24, 26-36, 38-46, and 49-50 in Plaintiff's original Federal Complaint are substantively the same as paragraphs 5-21, 23-38, and 40-42 of Plaintiff's State Complaint.

Based on the forgoing, the undersigned finds that Plaintiff's present cause of action "arises from the same transaction or series of transactions or the same core of operative facts" as his State action. Although the Plaintiff is presently alleging that Defendants' racial discrimination and retaliation interfered with his right to enter into an employment contract and deprived him of his right to make and enforce a contract, the Court finds that this claim existed and could have been asserted in State Court. Furthermore, the undersigned concludes that Plaintiff was aware of his claim of discrimination and retaliation during his State proceedings. Plaintiff stated the following during his deposition on October 26, 2006: "It looks like maybe they violated my constitutional rights or – it could have been racial discrimination for participating in a protected activity, because that e-mail that I sent to Dr. Polk regarding the allegations against me that Mr. Simmons had made, that could fall under racial harassment or hostile workplace, and if I made a complaint about it – and I complained to the proper people." (Document No. 19, Exhibit 1, p. 4.) Accordingly, the undersigned concludes that Plaintiff's causes of action are the same because the claim of racial discrimination and retaliation existed and "might have been offered" in Plaintiff's State action.

Finally, the undersigned considers the identity of the parties or their privies. Plaintiff asserts that his Amend Complaint does not name identical parties to those named in his State action. Plaintiff's Amended Complaint, however, names MSU and Charles Polk as Defendants.[8] The Court finds that Charles Polk and MSU were named as defendants in Plaintiff's State action. According, the undersigned finds that the State action and the present action involve identical parties. (Document No. 13-2.)

---

[8] Plaintiff's State action named MSU, Chalres Polk, James Silosky, Mike Summons, and Kay Stump as Defendants. (Document No. 13-2.)

Based on the foregoing, the undersigned finds that Plaintiff's present action is barred by the doctrine of *res judicata*. The prior lawsuit (1) was a final judgment on the merits, (2) involved the same causes of action, and (3) involved the same parties or their privies. The Court further finds that Plaintiff had a full and fair opportunity to litigate the claims decided in the State Court case. Plaintiff is merely attempting to reassert claims that have already been adjudicated, or could have been adjudicated, in State Court.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Document No. 13.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985);

Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

ENTER: February 19, 2008.

/s/ R. Clarke VanDervort
R. Clarke VanDervort
United States Magistrate Judge